Jason S. Gulley                          &ast;    IN THE
4308 Mount Vernon Place
Fredericksburg, VA 22408                 &ast;    UNITED STATES DISTRICT

Plaintiff,                               &ast;    COURT

v.                                       &ast;    FOR THE

District of Columbia                     &ast;    DISTRICT OF COLUMBIA
1350 Pennsylvania Avenue NW
Washington, DC 20004                     &ast;

Defendant.                               &ast;

Serve on:                                &ast;    Case No.:

 Muriel Bowser, Mayor                    &ast;
 D.C. Executive Office of the Mayor
 John A. Wilson Building                 &ast;
 1350 Pennsylvania Avenue, NW
 Washington, DC 20004                    &ast;

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;    &ast;

     **COMES NOW**, Jason S. Gulley, by and through his attorneys, Paul V. Bennett, Esq. and

the law office of Bennett & Ellison, P.C., and hereby sues the District of Columbia and states as

follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as

     amended, 42 U.S.C. § 2000e, *et seq.* (2018) (hereinafter "Title VII").

2.     Defendant District of Columbia is a governmental entity and is responsible for the

     conduct of the Metropolitan Police Department (hereinafter referred to as "MPD"),

     *infra,* ¶ 4.

3.     Defendant District of Columbia is further designated as a "body corporate" and may

     be sued. D.C. CODE § 1-102 (2018).

4.      That all the actions complained of herein took place at the MPD, the primary law

enforcement agency for the Defendant District of Columbia, in Washington, D.C. A

member of the MPD is considered a "Covered District employee." D.C. CODE § 1-

901.02(1) (2018).

5.      That at all times relevant hereto, Defendant District of Columbia employed fifteen

(15) or more persons, and is an "employer" within the meaning of Title VII.

6.      In accordance with Title VII, Plaintiff timely filed a Charge of Discrimination with

the U.S. Equal Employment Opportunity Commission ("EEOC") on April 12, 2018.

7.      On August 15, 2018, Plaintiff received a Notice of Right to Sue from the EEOC.

Therefore, Plaintiff has properly exhausted his administrative remedies before filing

suit and his lawsuit has been timely filed.

## FACTS COMMON TO ALL COUNTS

8.      Plaintiff's race is Caucasian. Defendant was aware at all times herein of Plaintiff's

race.

9.      Plaintiff was hired by MPD on or about March 27, 2000, as a Police Officer. On or

about October 15, 2006, Plaintiff was promoted to Sergeant with the MPD's Fourth

District. On or about April 14, 2016, Plaintiff was promoted to Lieutenant with

MPD's Sixth District.

10.     On or about December 6, 2016 (effective on or about January 12, 2017), Plaintiff was

demoted to Sergeant with MPD's Second District.

11.     As of April of 2018, Plaintiff's annual salary was approximately one hundred thirteen

thousand dollars ($113,000.00).

12.   Plaintiff's job duties as Sergeant included, without limitation, supervising police officers and approving paperwork drafted by police officers.

13.   Plaintiff's job duties as Lieutenant included, without limitation, conducting investigations into allegations of police officer misconduct and serving as Watch Commander.

14.   While Plaintiff served as a Sergeant with MPD's Fourth District, his supervisors included Brian Bray, Captain, and Wilfredo Manlapaz (Filipino), Commander.

15.   While Plaintiff served as a Lieutenant with MPD's Sixth District, one of his supervisors was David Taylor (African-American), Commander.

16.   While Plaintiff served as a Sergeant with MPD's Second District, one of his supervisors was Melvin Gresham (African-American), Commander.

17.   In or about June of 2014, Plaintiff was accused of having a sexual relationship with Aileen Hewick (female), Police Officer assigned to MPD's Fourth District.

18.   In or about July of 2014, Plaintiff assisted Officer Hewick with filing an EEO complaint wherein she alleged discrimination based on gender, with MPD's Equal Employment Opportunity Division. MPD did not investigate Officer Hewick's EEO complaint.

19.   On or about December 13, 2014, Plaintiff filed a complaint of sexual harassment with MPD. Plaintiff's complaint was not investigated.

20.   On or about December 16, 2014, Plaintiff was suspended without pay for fifteen (15) days for allegedly disobeying a direct order from upper management.

21.   On or about February 24, 2015, Plaintiff's police powers were revoked because, on or about January 31, 2015, he told Captain Bray and Commander Manlapaz that he

suffered from migraine headaches and took medication to alleviate the symptoms related thereto. Plaintiff was further sent for a fitness-for-duty evaluation.

22. On or about February 27, 2015, Plaintiff was transferred from MPD's Fourth District to MPD's Police Headquarters at the Central Information Command ("CIC") to answer telephone calls, thereby substantially affecting the terms and conditions of his employment with the Defendant.

23. Other Sergeants employed by MPD have had their police powers revoked, but unlike Plaintiff, were not transferred out of the Fourth District.

24. On or about April 21, 2015 (after being cleared to return to full duty), Plaintiff's police powers were once again revoked for allegedly making false statements about medical leave he took from approximately January 28-30, 2015.

25. Sometime in or about May of 2016, Plaintiff applied for the position of Sergeant with MPD's Homeland Security Bureau-Tactical Information Division. Because of the fifteen (15)-day suspension, *supra*, Plaintiff was not selected for the position. Sergeant Djossou (African-American female), who worked with Plaintiff in the Fourth District, was given the position without having even applied.

26. On or about June 11, 2016, Plaintiff was suspended for fifteen (15) days for allegedly authorizing a strip search of a prisoner.

27. On or about July 17, 2016, Plaintiff (who served as Watch Commander that evening) was suspended for twenty (20) days without pay for allegedly failing to account for a MPD vehicle's keys and not responding to the scene of a serious accident involving MPD police officers. Captain Marvin Lyons (African-American), who served as Watch Commander that day, gave the vehicle's keys to the police officers without

4

authorization, yet was not suspended. Moreover, two (2) other Lieutenants who responded to the scene of the accident, concluded that the accident was not serious.

28.     On or about July 27, 2016, Sergeant Kimberly Carter (African-American) falsely accused Plaintiff of making an offensive statement. When questioned about the alleged statement, Plaintiff explained that the person whom he made the statement to – Sergeant Gerthaline Pollock (African-American female) – was not offended.

29.     On or about July 28, 2016, Sergeant Carter spoke with Sergeants (first name unknown) Preston (African-American female), (first name unknown) Archer (African-American female), and (first name unknown) Fenton (African-American male), about "black power" and "sticking together against white officers." Sergeant Carter further stated that they should "watch out" for Police Officer Angela Galli (Caucasian female) because she is "trouble."

30.     Plaintiff subsequently complained to Captain Guillermo Rivera (Hispanic), MPD's Internal Affairs Division, and MPD's Court Liaison Division about the above-described racially-motivated comments, thereby protesting against a discriminatory work environment.

31.     On or about December 6, 2016 (effective on or about January 12, 2017), Plaintiff was demoted from Lieutenant to Sergeant, given a thirty (30)-day suspension without pay, and transferred to MPD's Second District. Sergeant Carter was not disciplined. Despite Captain Rivera refusing to accept Plaintiff's complaint, he (Captain Rivera) was not disciplined.

32.     On or about February 28, 2017, Plaintiff's police powers were revoked and he was given a sixty-five (65)-day suspension without pay.

33.    On or about March 21, 2017, Plaintiff filed a Charge of Discrimination with the

EEOC, alleging therein that he was discriminated against because of his race and

gender.

34.    On or about October 4, 2017, Plaintiff had a hearing with the District of Columbia's

Office of Employee Appeals ("OEA"), regarding his demotion from Lieutenant to

Sergeant.

35.    On or about October 15, 2017, Kendall Hawkins and Michael Fisher, African-

American Police Officers employed by MPD, observed Rafael Sarita, Hispanic Police

Officer employed by MPD, falling on a vehicle and appearing to be under the

influence of alcohol outside of a nightclub. Officer Sarita became aggressive towards

Officers Hawkins and Fisher, and referred to them as "niggers." Officer Sarita was

not disciplined.

36.    On October 30, 2017, Plaintiff complained to MPD's Office of Internal Affairs about

Sergeant Carter committing perjury during the hearing on October 4, 2017. Plaintiff

further stated that he believed Sergeant Carter did so because of his race. Plaintiff

reiterated that Sergeant Carter made the "black power" comment on July 28, 2016.

37.    On November 15, 2017, the OEA reversed MPD's decision to demote Plaintiff from

his position of Lieutenant and suspend him for thirty (30) days. Defendant was

directed to reinstate Plaintiff to Lieutenant and issue him the back pay to which he

was entitled.

38.    On December 20, 2017, Defendant filed a Petition for Review with OEA's Board,

disputing OEA's November 15, 2017, decision, *supra*, ¶ 37.

39.     On June 5, 2018, the matter was remanded back to the OEA Administrative Judge.
        But for Defendant filing the Petition for Review, Plaintiff would have been reinstated
        to Lieutenant.

40.     On October 29, 2018, the OEA Administrative Judge reversed his prior decision
        rendered on November 15, 2017, and upheld Plaintiff's thirty (30)-day suspension
        and demotion. Plaintiff has the right to file a Petition for Review with the Superior
        Court of the District of Columbia.

41.     At all times relevant herein, Plaintiff met and/or exceeded MPD's legitimate job
        expectations.

**COUNT I**
**RACIAL DISCRIMINATION**
**(Disparate Treatment)**
**Title VII of the Civil Rights Act of 1964, as amended**
**42 U.S.C. § 2000e, *et seq.***

42.     Plaintiff hereby restates and incorporates paragraphs 1 through 41 of this Complaint
        as though fully set forth herein.

43.     Plaintiff was qualified and satisfactorily performing his duties while serving as a
        Lieutenant.

44.     That Defendant carried out the aforementioned acts of discrimination against Plaintiff
        on the basis of his race (Caucasian) – a protected class under Title VII.

45.     That the aforementioned acts constitute unlawful practices pursuant to Title VII of the
        Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

46.     That the effect of the practices complained of above was to deprive Plaintiff of equal
        employment opportunities and otherwise adversely affect his status as an employee
        because of his race (Caucasian).

47.   That the unlawful employment practices complained of above were intentional.

48.   That similarly-situated employees outside the protected class, including, but not limited to, Sergeant Kimberly Carter (African-American) and Police Officer Rafael Sarita (Hispanic), were not subjected to the same or similar severe adverse employment actions that Plaintiff endured, including, but not limited to, being demoted, suspended, or transferred, despite their having stated racially-derogatory comments and/or engaged in racially-motivated behavior.

49.   After Plaintiff learned that Officer Sarita engaged in racially-motivated behavior on or about October 15, 2017, and was not subsequently disciplined, Plaintiff then realized that his demotion, suspension, and transfer on or about December 6, 2016 (effective on or about January 12, 2017), was motivated by discriminatory animus.

50.   Defendant's Petition for Review, filed on December 20, 2017, further solidified Plaintiff's awareness that he had been demoted and suspended because of his race.

51.   That the discriminatory actions, as set forth above, have caused and will continue to cause Plaintiff to suffer lost earnings and earning capacity, severe emotional distress, humiliation, and mental anguish.

52.   That the intentional discriminatory actions of Defendant, as alleged above, were done with malice and/or with reckless indifference to Plaintiff's rights.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## COUNT II
## RETALIATION
### (Adverse Actions and Protected Activity Deterrents)
### Title VII of the Civil Rights Act of 1964, as amended,
### 42  U.S.C. § 2000e, *et seq.*

53.  Plaintiff hereby restates and incorporates paragraphs 1 through 41 of this Complaint as though fully set forth herein.

54.  On or about March 21, 2017, Plaintiff filed a Charge of Discrimination with the EEOC, alleging therein that he was discriminated against because of his race and gender.

55.  On October 30, 2017, Plaintiff complained to MPD's Office of Internal Affairs about Sergeant Carter committing perjury during the hearing on October 4, 2017. Plaintiff further stated that he believed Sergeant Carter did so because of his race. Plaintiff reiterated that Sergeant Carter made the "black power" comment on July 28, 2016.

56.  On December 20, 2017, Defendant filed a Petition for Review with OEA's Board, to appeal the OEA's November 15, 2017, decision, that Plaintiff should be reinstated to Lieutenant.

57.  The aforementioned complaints unequivocally constituted "legally protected activities" under Title VII.

58.  The aforementioned legally protected activities were known by upper management to have occurred.

59.  The subsequent Petition for Review, as set forth in the above-referenced facts common to all counts, amounted to illegal retaliation. But for Defendant filing the Petition for Review, Plaintiff would have been reinstated to Lieutenant.

60.   That the aforementioned act of retaliation for complaining about illegal employment practices constituted an unlawful employment practice pursuant to Title VII.

61.   That the effect of the practice complained of above was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee based upon his legally protected activities.

62.   That the intentional retaliatory act complained of above was done with malice and/or with reckless indifference to Plaintiff's rights.

63.   As a direct and proximate result of the Defendant's retaliatory act, Plaintiff has suffered lost wages and benefits, emotional distress, attorney's fees, and litigation costs.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## PRAYER FOR DAMAGES

WHEREFORE, for the foregoing reasons, Jason S. Gulley, Plaintiff, demands judgment against Defendant, District of Columbia as follows:

a.   $300,000.00 as compensatory damages;

b.   Prejudgment and post judgment interest;

c.   Award attorney's fees and costs, including expert witness fees, as allowed by law;

d.   And for such other and further relief as this Honorable Court deems just and equitable.

Respectfully Submitted,


_____/s/_____
Paul V. Bennett, Esq. (DC Bar No. 427358)
Bennett and Ellison, P.C.
2086 Generals Highway, Ste. 201
Annapolis, Maryland 21401
Tel: (410) 974-6000
Email: pbennett@belawpc.com

*Attorney for Plaintiff*


## DEMAND FOR JURY TRIAL

Jason S. Gulley, Plaintiff, hereby demands that this matter be tried by jury.


_____/s/_____
Paul V. Bennett, Esq. (DC Bar No. 427358)

11