## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JASON S. GULLEY**, | |
| Plaintiff, | |
| v. | Case No. 1:18-cv-02607 (TNM) |
| **DISTRICT OF COLUMBIA**, | |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

Jason Gulley joined the D.C. Metropolitan Police Department ("MPD") in March 2000. Over the next 16 years, he was promoted twice, ultimately becoming a Lieutenant. But that lofty rank was short-lived. Within a year, Gulley was demoted back to Sergeant. A few years later, MPD terminated him altogether.

Gulley, who is Caucasian, sued the District of Columbia for racial discrimination and retaliation, claiming that MPD favored minority officers in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. Pending here is the District's motion for summary judgment.

The District argues that most of Gulley's allegations are administratively barred. And for those that remain, the District maintains that it terminated him because of his long history of disciplinary infractions, not for any discriminatory purpose. Gulley claims that the District's explanations are an illegal pretext for its discriminatory intent. Upon careful review of the briefs and the record, the Court agrees with the District. Gulley's disciplinary infractions and other misconduct gave the District ample cause for its actions. As explained more fully below, the

Court holds that no reasonable jury could find in Gulley's favor.  The District is entitled to summary judgment.

## I.

MPD hired Jason Gulley as a Police Officer in March 2000.  Def.'s Stmt. of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 23-1.  In October 2006, he was promoted to Sergeant. Pl.'s Opp'n at 1, ECF No. 29.[1]  In April 2016, he was promoted to Lieutenant.  *Id.*

In March 2017, Gulley filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination and retaliation from June 21, 2014, until February 28, 2017.  Charge of Discrimination ("March 2017 Charge"), ECF No. 23-4.  In that charge, Gulley alleged that his supervisors wrongfully accused him of engaging in an extramarital affair with one of his subordinates.  March 2017 Charge at 4.  He also alleged that MPD unjustly suspended him for 15 days for disobeying a direct order after he patrolled with that subordinate, despite Gulley's claim that no one ever issued him the order.  *Id.*; *see* January 2015 DRB Rpt., ECF No. 24-2 (finding that Gulley disobeyed his supervisor's orders by changing the subordinate's vehicle assignment without authorization and patrolling outside his assigned area).  And he said his supervisors revoked his police powers and transferred him to a new assignment "out of retaliation."  March 2017 Charge at 5; *see id.* at 4–5.  Gulley also said that "[b]ecause of the discipline" MPD had imposed, he "was disqualified from" a position for which he had applied as a Sergeant with the Homeland Security Bureau–Tactical Information Division.  *Id.* at 5.  Instead, he claimed, "my spot was given to a black female . . . who did not even apply."  *Id.*

---

[1]  All page numbers refer to the pagination that the Court's CM/ECF system generates.

Gulley's March 2017 Charge also included claims of discrimination after MPD promoted him in April 2016.  He challenged a 15-day suspension without pay that his new supervisor levied after Gulley inappropriately authorized the strip search of a prisoner.  *Id*. at 6.  He also objected to his suspension without pay for 20 days for failing to account for the keys to a police cruiser and for not going to the scene of a serious event, despite Gulley's assessment "that the event was not serious and two other lieutenants were on scene."  *Id*.  And Gulley complained that an African-American Sergeant made a racially motivated complaint against him, for which he was demoted from Lieutenant back to Sergeant and suspended without pay for 30 days, while the Sergeant went unpunished.  *Id*. at 6–7.  Finally, Gulley challenged a February 2017 suspension without pay for 65 days.  *Id*. at 7.

The EEOC responded by form letter on August 10, 2017.  Dismissal and Notice of Rights ("August 2017 Right-to-Sue"), ECF No. 23-5.  The EEOC informed Gulley that it was "unable to conclude that the information obtained establishes violations of the statutes."  *Id*.  It informed Gulley of his right to sue for the allegations.  *Id*.  In capitalized, underlined, boldfaced type, the letter warned Gulley that for any claim under Title VII, "Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost."  *Id*.

In April 2018, Gulley filed a second Charge of Discrimination with the Virginia Division of Human Rights and the EEOC, again for racial discrimination and retaliation.  Charge of Discrimination ("April 2018 Charge"), ECF No. 23-6.  In it, Gulley again raised his claim that he was punished unjustly after the African-American Sergeant complained about him.  *Id*. at 1; *cf*. March 2017 Charge at 6–7.  Gulley added that since his March 2017 Charge, he had reported to the Internal Affairs Division ("IAD") that the Sergeant had perjured herself at his disciplinary hearing, but the IAD failed to investigate his complaint.  April 2018 Charge at 1.  And to bolster his claim of

discrimination, Gulley cited an incident in October 2017 in which two Hispanic officers were arrested for directing racial slurs and profanity at African-American officers yet faced no discipline. *Id.* Finally, Gulley claimed that MPD had retaliated against him for filing his IAD complaint against the African-American Sergeant. *Id.*[2]

Like its response to his first charge of discrimination, the EEOC once again sent Gulley a form letter response to the April 2018 Charge. Dismissal and Notice of Rights ("August 2018 Right-to-Sue"), ECF No. 23-7. The EEOC sent that letter on August 14, 2018. *Id.* Once again, the EEOC was unable to verify the claims. *Id.* And it included the same deadline for Gulley to file a civil suit within 90 days. *Id.* This time Gulley did so. He filed his Complaint here exactly 90 days later. Compl., ECF No. 1.

After Gulley filed his Complaint, the IAD completed a 100-page investigative report into many allegations of on- and off-duty misconduct against him. April 2019 IAD Rpt., ECF No. 24-10. That investigation sustained nine allegations against Gulley. *See id.* at 1–5. Among them was an incident in January 2019 that the IAD concluded was "conduct unbecoming an officer, including acts detrimental to good discipline, conduct that would adversely affect the employee's or the agency's ability to perform effectively." *Id.* at 2. The investigation found that Gulley threatened to kill his wife and members of MPD in front of his 16-year-old daughter,

---

[2]  This last claim appears to refer to MPD's handling of a disciplinary proceeding in 2017–18. According to Gulley,

> On September 15, 2016, Plaintiff was served with Proposed Adverse Action of a fifteen (15)-day suspension, DRB# 604-16, a twenty (20)-day suspension, DRB# 541-16, and a thirty (30) day suspension and demotion, DRB# 676-16. All were served on Plaintiff in writing at the Sixth District. All were appealed through the Chief of Police and denied. Final Agency Action was served in writing for all said Adverse Actions on January 12, 2017. Plaintiff filed an appeal with OEA on January 30, 2017. A hearing was held in front of [Administrative Law] Judge Joseph Lim on October 4, 2017. On November 15, 2017, Judge Lim made an Initial Decision, Reversing the Agency's thirty (30)-day suspension and demotion. The Defendant filed a Petition for Review on December 20, 2017. After multiple written briefs requested by Judge Lim, he finally reversed his own decision in favor of the Defendant on October 29, 2018.

Pl.'s Interrog. at 12, ECF No. 23-10. Gulley's April 2018 Charge alleges that MPD's appeal of the ALJ's Initial Decision was in retaliation for Gulley's IAD complaint. April 2018 Charge at 1.

which led his wife to call deputy sheriffs to their home in northern Virginia. *Id.* at 2, 9 n.2. The report found that after the deputies responded to the call, Gulley "spoke aggressively and in a demeaning manner" to the deputies while identifying himself as a member of MPD. *Id.* at 3. And the investigation found that Gulley told them that MPD's Chief of Police was a "piece of sh—" who "knocked his wife's teeth out." *Id.* at 14.

That incident followed another sustained allegation of misconduct when Gulley's wife called law enforcement to their home. *Id.* at 1. In December 2018, Gulley "consumed a quantity of alcohol that lead [sic] to Mrs. Gulley and [their daughter] fearing for their safety and calling" the local sheriff. *Id.* When deputies arrived, Gulley's wife described him as an alcoholic. *Id.* at 9. Gulley's daughter added that her father had beaten Mrs. Gulley before and said "once he drinks he is going to beat her" again. *Id.* After Gulley refused to leave the house, Mrs. Gulley took her daughter away for the night. *Id.* at 9–10. The deputies left without charging Gulley, *id.* at 11, but the IAD investigation concluded that Gulley "provided false statements" to the reporting deputies and sustained a violation of MPD's General Order against "being under the influence of 'alcoholic beverage' when off duty," *id.* at 1.

IAD also sustained a separate violation from that incident for conduct "prejudicial to the reputation of the MPD" because Gulley "laughingly disclosed" to the deputies "an instance of misconduct that he was previously investigated for and demoted." *Id.* at 5. While they were questioning Gulley about his wife and daughter's claims, he "said that he was 'tired of being the white cop in a black neighborhood'" and recalled how he had "told a room full of D.C. citizens that they did not pay his salary because half of them were on welfare." *Id.*

And the investigation also sustained allegations of on-duty misconduct. On the day of his wife's 911 call in December 2018, Gulley was Absent Without Leave ("AWOL") when he left

his assignment before completing his shift.  *Id*. at 2.  The investigation also concluded that Gulley neglected his duties as "check-off official" by failing to supervise the officers on his shift. *Id*. at 3.  And it found that Gulley had failed to conduct a required test of his Body Worn Camera or to wear it for his entire shift.  *Id*. at 5.

After the IAD investigation, MPD notified Gulley of further disciplinary action and ultimately his termination.  Gulley filed an Amended Complaint in August 2019, in which he added allegations of discrimination and retaliation.  Am. Compl., ECF No. 15.  First, Gulley claimed that MPD discriminated against him by making him use sick leave to obtain medical care for an injury he sustained in October 2018 that MPD wrongly determined had occurred outside the line of duty.  *Id*. ¶ 40.  Next, Gulley claimed that MPD wrongly posted his photograph and an officer safety bulletin after the domestic violence call his wife made in January 2019.  *Id*. ¶ 45; *see* Pl.'s Dep. at 153:20–154:2, ECF No. 23-8 ("There is a bulletin out with my picture on it that says I'm not allowed into the MPD establishments.  They also put my tag of my vehicle into the license plate reader system, with an officer alert.  So any time I go through any cameras, it sends out an officer alert.").  Gulley also claimed MPD discriminated against him by suspending him without pay for 32 days over his failure to respond to an use-of-force incident.  *Id*. ¶ 48.  And finally, Gulley claimed MPD discriminated against him when it notified him of his termination and placed him on indefinite leave without pay.  *Id*. ¶¶ 49–50.

The District seeks summary judgment on the Amended Complaint and that motion is ripe.  Def.'s Mot., ECF No. 23; Pl'.s Opp'n; Def.'s Reply, ECF No. 32.[3]

---

[3]  The Court has jurisdiction under Title VII's jurisdictional provision, 42 U.S.C. § 2000e–5(f)(3), and the federal question statute, 28 U.S.C. § 1331.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 503 (2006).

## II.

The summary judgment standard is a familiar one. To prevail, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is material if it could alter the outcome of the suit under the substantive governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once this showing has occurred, the non-moving party bears the burden of setting forth "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

At summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

"Title VII of the Civil Rights Act makes it unlawful for an employer to 'fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (quoting 42 U.S.C. § 2000e–2(a)(1)). "Where . . . the record contains no direct evidence that the adverse employment action of which the plaintiff complains was caused by prohibited discrimination, we turn to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), to analyze the claim." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).

First, the plaintiff bears the burden of making a prima facie case of racial discrimination. *Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006). "To state a prima facie case of discrimination, a plaintiff must allege she is part of a protected class under Title VII, she suffered a cognizable adverse employment action, and the action gives rise to an inference of discrimination." *Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015). "If the plaintiff clears that hurdle, the burden shifts to the employer to identify the legitimate, non-discriminatory or non-retaliatory reason on which it relied in taking the complained-of action." *Id*. at 1092. Finally, if the employer does so, the burden shifts back to the plaintiff for a chance to show that the employer's stated reason for its actions was a pretext for unlawful discrimination. *Id*.

But when the employer has offered a legitimate reason for its adverse employment action, "we skip ahead to the third step in the test." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016). Then the Court "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady*, 520 F.3d at 494 (emphasis in original). "Rather, in considering an employer's motion for summary

8

judgment . . . the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Id.*

The Court considers "whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff . . . or any contrary evidence that may be available to the employer." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc). But the Court "does not sit as a 'super-personnel department' that reexamines an employer's business decisions." *Wheeler*, 812 F.3d at 1114 (internal citation omitted). And the Court "may not second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (cleaned up). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### III.

Turning to Gulley's claims of discrimination and retaliation, the Court finds that the District is entitled to summary judgment. *First*, Gulley's allegations listed in his March 2017 Charge to the EEOC are untimely. *Second*, Gulley failed to administratively exhaust the allegations he added in his Amended Complaint. *Finally*, as to Gulley's exhausted claims, he has not shown that the District's stated reasons for disciplining and terminating him were pretextual. In short, no reasonable jury could find for Gulley on this record.

## A.

An employee making a Title VII claim must timely exhaust his administrative remedies "before bringing . . . claims to court." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *see* 42 U.S.C. § 2000e–5(f)(1). "That means filing an administrative charge with the EEOC and allowing the agency time to act on the charge before commencing litigation." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526 (D.C. Cir. 2019) (cleaned up). The employee must file that charge "within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *see* 42 U.S.C. § 2000e-5(e)(1). And after receiving a "right to sue" letter, the employee must file his lawsuit within 90 days. 19 C.F.R. § 1614.407; 42 U.S.C. § 2000e–5(f)(1); *see also Colbert v. Potter*, 471 F.3d 158, 160 (D.C. Cir. 2006).

The exhaustion requirements under Title VII "are akin to a statute of limitations." *Mount v. Johnson*, 36 F. Supp. 3d 74, 80 (D.D.C. 2014) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it." *Bowden*, 106 F.3d at 437. "If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Id*.

## 1.

Gulley's allegations of discrimination and retaliation from his March 2017 Charge are untimely because he failed to bring them within 90 days of receiving his EEOC letter. Recall that the EEOC sent Gulley his first Right-to-Sue Letter in August 2017. And recall too that in that letter, the EEOC warned Gulley in bold, underlined, all-caps text that his "lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this

charge will be lost." August 2017 Right-to-Sue. Yet Gulley did not file this lawsuit until more than a year later, in November 2018. Compl.

The statute and case law are clear: "After an employee files a charge with EEOC and receives notice of final agency action, the employee must file suit within ninety (90) days." *Oviedo v. Wash. Metro. Area Trans. Auth.*, 948 F.3d 386, 394 (D.C. Cir. 2020); *see* 42 U.S.C. § 2000e-5(f)(1). So because Gulley "needed to file suit well before this lawsuit commenced," he is barred from bringing those allegations now. *Oviedo*, 948 F.3d at 394; *see also Smith-Hayne v. D.C.*, 155 F.3d 575, 578 (D.C. Cir. 1998) (holding that Title VII suit filed on 92nd day was barred by statute). Nor does Gulley argue otherwise. *See generally* Pl.'s Opp'n. The Court holds that the allegations in Gulley's March 2017 Charge are time barred.[4]

## 2.

If those allegations are too late, others are too soon. The District argues that Gulley failed to exhaust the allegations he added in his Amended Complaint. Def.'s Mot. at 18–20. Gulley counters that he did exhaust those allegations, both because he filed an Inquiry with the EEOC and because those allegations were covered by his earlier Charge of Discrimination. Pl.'s Opp'n at 4–6. He is mistaken.

Traditionally in this Circuit, an employee could bring claims in court "that were actually part of the administrative charge" or "are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Haynes*, 924 F.3d at 526 (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). "For a charge to be regarded as 'reasonably related'

---

[4] This holding also bars Gulley's claim from his April 2018 Charge that he was punished unjustly after an African-American Sergeant complained about him. April 2018 Charge at 1. Because Gulley raised that claim in his March 2017 Charge, it is untimely. *See* March 2017 Charge at 6–7. A plaintiff cannot revivify a late claim by citing it in a second EEOC complaint.

to a filed charge it must at a minimum arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id*. at 527 (quoting *Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010)) (cleaned up).  This gives the agency "an opportunity to resolve the claim administratively before the employee files her complaint in district court." *Payne*, 619 F.3d at 65 (cleaned up).

After the D.C. Circuit's decision in *Park*, the Supreme Court cast that opinion into some doubt with *Morgan*.  There, the Supreme Court rejected the practice in some circuits of considering "continuing violations" of Title VII, "so long as one act falls within the charge filing period" and other acts "are plausibly or sufficiently related to that act."  *Morgan*, 536 U.S. at 114; *see id*. at 110–14.  As the D.C. Circuit has acknowledged, some courts' reading of *Morgan* "would likely preclude the approach" the Circuit took in *Park*.  *Haynes*, 924 F.3d at 527 n.1 (citing *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003)).  But the D.C. Circuit has yet to decide whether the "'like or reasonably related' doctrine survives *Morgan*."  *Id*.

Instead, in *Payne*, the Circuit found that it was unnecessary to decide the question because the employee bringing the claim failed to administratively exhaust "even on her own theory."  619 F.3d at 65.  Similarly, in *Haynes*, the Circuit again declined to wrestle with *Morgan* because the employee could not "even meet the standard set forth in *Park*."  *Haynes*, 924 F.3d at 527 n.1 (citing *Payne*, 619 F.3d at 65).  So too here.  The Court will apply the Circuit's "like or reasonably related" test because—as in *Haynes*—Gulley failed to administratively exhaust his added claims even under that more generous framework.  *See id*.; Def.'s Mot. at 19 ("[E]ven using the 'like or reasonably' related test, Plaintiff has failed to exhaust his administrative remedies.").

In his Opposition, Gulley claims that because MPD "allegedly used" his "past disciplinary record" to decide his termination, those claims are reasonably related to his earlier Charge.  Pl.'s Opp'n at 6.  The Court is unconvinced.

Consider first Gulley's exhausted April 2018 Charge.  There, he claimed MPD discriminated against him when the IAD failed to investigate his complaint that an African-American Sergeant had perjured herself at his disciplinary hearing.  April 2018 Charge at 1.  He contrasted his own discipline with two Hispanic officers who were never disciplined even though they were arrested for directing racial slurs and profanity at African-American officers.  *Id.*  And he said MPD retaliated against him for his IAD complaint.  *Id.*

Now compare the allegations Gulley added in his Amended Complaint.  First, Gulley claimed that MPD discriminated against him by classifying an October 2018 injury as outside the line of duty.  Am. Compl. ¶ 40.  That claim simply has nothing to do with Gulley's earlier Charge of Discrimination.  Next, Gulley added that MPD discriminated against him when it posted his photograph and an officer safety bulletin after his wife called police to their house in January 2019.  *Id.* ¶ 45.  Again, that claim was unrelated to Gulley's April 2018 Charge.  Similarly, Gulley's complaint about his suspension without pay over a failure to respond to a use-of-force was a new claim.  *See id.* ¶ 48.  And finally, Gulley claimed discrimination over his termination.  *Id.* ¶¶ 49–50.

None of these allegations are reasonably related to Gulley's exhausted claims so that the District had "an opportunity to resolve the claim administratively" before Gulley filed his Complaint.  *Payne*, 619 F.3d at 65 (cleaned up).  Gulley's allegations would not have "arise[n] from the administrative investigation that can reasonably be expected to follow" Gulley's April 2018 Charge of Discrimination.  *See Haynes*, 924 F.3d at 527.  Indeed, MPD only notified Gulley about his proposed termination following its investigation into his on- and off-duty

misconduct, and particularly his wife's 911 call reporting Gulley's threat to kill her and MPD officers. *See* April 2019 IAD Rpt. Nor did that IAD investigation concern Gulley's April 2018 Charge.

More, Gulley's claim tries to prove too much. He suggests that because MPD "allegedly used" his "past disciplinary record" to decide his termination, those claims are reasonably related to his earlier Charge. Pl.'s Opp'n at 6. But on this theory, *any* personnel decision that considered the facts of an earlier Charge would be administratively exhausted. Whatever the state of the *Park* line of cases after *Morgan*, this is a bridge too far. *See Morgan*, 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"). Gulley did not exhaust the allegations in his Amended Complaint through his earlier charge of discrimination.

Nor did Gulley exhaust those claims through an inquiry to the EEOC in February 2020. Pl.'s Opp'n at 4–5. In that submission, Gulley identified his suspension without pay from his alleged failure to respond to the incident of force, his indefinite suspension without pay, and his termination. February 2020 Inquiry, ECF No. 30-2; *see* Pl.'s Opp'n at 5. But Gulley's EEOC inquiry did not satisfy Title VII's exhaustion requirement. Recall that timely exhaustion is required "before bringing claims to court." *Bowden*, 106 F.3d at 437; *see* 42 U.S.C. § 2000e–5(f)(1). Recall too that timely exhaustion "means filing an administrative charge with the EEOC *and* allowing the agency time to act on the charge before commencing litigation." *Haynes*, 924 F.3d at 526 (emphasis added) (cleaned up).

Gulley did neither. He filed no administrative charge; he filed an inquiry. *See* February 2020 Inquiry. But the EEOC's regulations and the inquiry itself are clear they are not one in the same. For one thing, there is the regulation. *Compare* 29 C.F.R. § 1614.105 (Pre-complaint

processing), *with* id. § 1614.106 (Individual complaints).[5]  Then there is the inquiry itself, which

calls Gulley a "potential charging party."  *See* February 2020 Inquiry at 1.  More, the inquiry

states Gulley's deadline to file a charge after the inquiry.  *Id*.  Gulley was put on notice that he

had not satisfied Title VII's administrative charge requirement, yet he failed to follow up his

inquiry with a formal charge.  *See Haynes*, 924 F.3d at 526; *cf. Moini v. LeBlanc*, --- F. Supp. 3d

---, ---, 2020 WL 1975786, at *3 (D.D.C. Apr. 24, 2020) (describing plaintiff's "initial inquiry"

to the EEOC followed by a "formal Charge of Discrimination").

    And even if Gulley's initial inquiry satisfied the charge requirement, he did not give "the

agency time to act on the charge before commencing litigation."  *Haynes*, 924 F.3d at 526

(cleaned up).  Unlike with his two formal Charges in April 2017 and March 2018, the EEOC

never sent Gulley a right-to-sue letter for his February 2020 Inquiry.  *Cf.* August 2017 Right-to-

Sue; August 2018 Right-to-Sue.  And why?  Because the EEOC never completed a review.  So

Gulley failed to exhaust the claims he added in his Amended Complaint.

## B.

    Turning to the merits, Gulley's claims could not lead a reasonable jury to conclude that

the District discriminated or retaliated against Gulley.

    Gulley argues that the District's stated reasons for its adverse employment actions were

merely pretext for discrimination.  He does this by invoking two common sources of evidence in

Title VII cases: the District's "better treatment of similarly situated employees outside [his]

---

[5] *See also* EEOC Public Portal FAQ, https://publicportal.eeoc.gov ("Q:  If I submit an online inquiry, does that mean I filed a charge of discrimination?  A:  No.  An inquiry is typically your first contact with the EEOC regarding your concerns about potential employment discrimination, which is followed by an interview with EEOC staff. Submitting an inquiry is the first step to determine whether you want to proceed with filing a formal charge of discrimination.  A charge of discrimination is a signed statement asserting that an organization engaged in employment discrimination.  It requests EEOC to take remedial action.  The laws enforced by EEOC, except for the Equal Pay Act, require you to file a charge before you can file a lawsuit for unlawful discrimination.  There are strict time limits for filing a charge.").

protected group . . . [and the District's] deviation from established procedures or criteria."
*Wheeler*, 812 F.3d at 1115; *see* Pl.'s Opp'n at 7–17.  But none of Gulley's comparators had his
extensive disciplinary history.  Nor did the District deviate from its own policies in holding
Gulley accountable for his misconduct.  Gulley has failed to show that the District "intentionally
discriminated against [him] on the basis of race."  *See Brady*, 520 F.3d at 494.

## 1.

A plaintiff invoking comparator evidence "must demonstrate that she and the alleged
similarly-situated employee were charged with offenses of comparable seriousness and that all of
the relevant aspects of her employment situation were nearly identical to those of the other
employee."  *Wheeler*, 812 F.3d at 1115–16 (cleaned up).  "Factors that bear on whether someone
is an appropriate comparator include the similarity of the plaintiff's and the putative
comparator's job and job duties, whether they were disciplined by the same supervisor, and in
cases involving discipline, the similarity of the offenses."  *Id*. at 1116 (citation omitted).  Here,
the last consideration is the most salient.  "In order to be considered similarly situated, it is not
necessary that the comparators engaged in the exact same offense; what is required is merely that
the offenses are of 'comparable seriousness.'"  *Id*. at 1118 (quoting *McDonnell Douglas*, 411
U.S. at 804).

Gulley has the burden to prove his comparators were similarly situated.  And the lack of
evidence of similarity is itself reason to grant summary judgment.  "A moving party is entitled to
summary judgment if the nonmoving party 'fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on which that party will bear
the burden of proof at trial.'" *Burley v. Nat'l Pass. Rail Corp.*, 801 F.3d 290, 295 (D.C. Cir.
2015) (citing *Celotex,* 477 U.S. at 322).  "At the summary judgment stage, however, where a

plaintiff relying on comparator evidence fails to produce evidence that the comparators were actually similarly situated to him, an inference of falsity or discrimination is not reasonable, and summary judgment is appropriate." *Walker v. McCarthy*, 170 F. Supp. 3d 94, 108 (D.D.C. 2016) (cleaned up).

Gulley has not carried his burden.  To begin, there are significant gaps in his comparator evidence.  For instance, Gulley has not identified the races of several key comparators.  Gulley does not specify the races of Officers B.B. and C.A.,[6] stating only that he believes B.B. to be "non-Caucasian" and that C.A.'s race is unknown.  Pl.'s Opp'n at 15–16.  And Gulley has not identified the decisionmakers for all alleged comparators either.  In many cases, the only information Gulley included in the record was the Human Resources or IAD employee who made the factual determination of guilt, but not necessarily the commanding officer who imposed the recommended punishment.  *See, e.g.*, Pl.'s Sealed Exhibits at 32–57, ECF No. 31. Although the same general disciplinary review process applied to most of the comparators' infractions, it is far from clear that these comparators "were disciplined by the same supervisor" as Gulley.  *Wheeler*, 812 F.3d at 1116.

More, there is missing information about his comparators' discipline.  Gulley cites several Disciplinary Review Board ("DRB") files that he failed to append to his Opposition brief.  Yet those files undergird Gulley's comparisons for five comparators: Lieutenant M.H., Pl.'s Opp'n at 9 & n.3; Lieutenant F.L., *id*. at 11; Sergeant I.G., *id*. at 12; Sergeant D.C., *id*. at 13; and Sergeant C.H., *id*. at 13–14.  These gaps alone raise non-trivial questions about Gulley's ability to carry his burden and they limit the persuasiveness of his comparator evidence.

---

[6] The Court adopts the District's convention of using just the comparators' initials, given the privacy interests involved.

But even if Gulley's evidence is true, the comparators are most assuredly not similarly situated to him. *See Burley*, 801 F.3d at 295 ("In considering a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in its favor.").  In general, Gulley tries to identify comparators by drawing parallels between their offenses and one or more of his.  But his comparison is flawed.  None of his comparators has a disciplinary record as extensive as his.  And even before getting there, the circumstances of many of the comparators' individual offenses are unlike his own.

For example, IAD found that Officer B.B. was *not guilty* of hitting his wife, Pl.'s Sealed Exhibits at 43–44, ECF No. 31, but sustained the allegation that Gulley threatened to kill his wife and members of MPD, April 2019 IAD Rpt. at 2.  So while Gulley claims that Officer B.B.'s suspension without pay for "only" 10 days proves discrimination, Pl.'s Opp'n at 15, he rests his claim on a faulty comparison, *see* Pl.'s Sealed Exhibits at 44.

Similarly, while Officer R.S. was suspended without pay for 30 days after he made racist comments and was aggressive while drunk, he later joined an Alcoholics Anonymous program. Pl.'s Sealed Exhibits at 53–56.  Meanwhile, after Gulley's wife called the sheriff to report his drunk and disorderly conduct, Gulley not only failed to show remorse for his conduct, he shared with the deputies his own past discipline and lied to them about his conduct.  April 2019 IAD Rpt. at 1, 5, 9.  Indeed, Gulley's 30-day suspension without pay for that infraction was the same punishment as Officer R.S.'s.  *See* Pl.'s Sealed Exhibits at 3–5.

But focusing on these individual offenses, one risks losing sight of the forest for the trees. The primary reason that Gulley does not have apt comparators is that none of them share his long history of disciplinary problems.  According to Gulley's own evidence, only one of his comparators had more than a single prior offense.  Gulley had no less than a dozen.

Consider his closest comparator, Sergeant K.C.  *See* Pl.'s Opp'n at 14–15.  Her first infraction was for "failure to obey orders/directives," for which it appears she was reprimanded in writing.  Pl.'s Sealed Exhibits at 31.  Not long after, she received a one-day suspension and two days of forfeited leave for "negligent use or loss of MPD equipment."  *Id*.  Then a second incident of "failure to obey orders/directives" yielded another reprimand.  *Id*.  And then she was suspended for two days for prejudicial conduct.  *Id*.  To be sure, she is hardly a model of policing.

But her blemished record shines next to his.  Consider:

- July 2012: Conduct unbecoming, five days suspension without pay held in abeyance. January 2015 IAD Rpt. at 18, ECF No. 24-2.

- April 2013: Failure to obey a directive, 20 days suspension without pay.  *Id*.

- October 2013: Failure to show at the clinic, reprimand.  *Id*.

- May 2014: Violation of orders and directives, reprimand.  *Id*.

- January 2015: Failure to obey a direct order, 15 days suspension.  *See generally id*.; Def.'s Mot. at 24.

- April 2015: Making knowingly false statements about medical leave, police powers revoked.  April 2015 Adverse Action, ECF No. 24-3.

- June 2016: Authorizing strip search of prisoner without right, 15 days suspension. March 2017 Charge at 6.; July 2016 DRB Rpt., ECF No. 24-5; Am. Compl. ¶ 26.

- July 2016: Failing to account for keys to MPD vehicle and failing to respond to scene of serious accident, 20 days suspension.  March 2017 Charge at 6; June 2016 DRB Rpt., ECF No. 24-6; Am. Compl. ¶ 27.

- July 2016: Making statement that he was tired of citizen complaints by welfare recipients who did not pay his salary, 30 days suspension and demotion from Lieutenant to Sergeant.  March 2017 Charge at 6–7; July 2016 DRB Rpt., ECF No. 24-7; Am. Compl. ¶¶ 10, 31.

- September 2018: Neglect of duty, prejudicial conduct, and violations of orders and directives, 20 days suspension.  January 2019 Adverse Action, ECF No. 24-11.[7]

In short, Gulley's comparator evidence is unpersuasive.  Looking beyond the holes in the evidence itself, Gulley has not presented a single similarly situated comparator with a disciplinary record that even approaches his own.  One hopes this is because there are no other MPD officers with similar records, or if there were, that they also have been terminated.

More, his record reveals why MPD disciplined so many of his alleged comparators with light punishment.  *See* Pl.'s Opp'n at 9–17.  Early in his career, Gulley's punishments were lighter too.  But as his number of infractions grew, so did the severity of his punishments.  *See* Def.'s Reply at 11.  Understandably, MPD's policy is to employ "progressive discipline" consistent with its aim of subjecting its members "to discipline for cause."  MPD General Order 120.21, Section II, ECF No. 23-3.

Yet Gulley has not shown a similar trend with any other comparator.  Gulley has not presented "a comprehensive description of prior disciplinary actions initiated against the disciplined employee to ensure close similarity in prior disciplinary history.  Without a more fulsome account of these disciplinary actions, [Gulley] cannot demonstrate that all of the relevant

---

[7] Gulley's litany of misconduct includes many incidents he cited in his untimely March 2017 Charge of Discrimination and his unexhausted Amended Complaint.  *See* March 2017 Charge; Am. Compl.  Although the Court does not consider these unexhausted incidents for Gulley's claims of discrimination and retaliation, it does consider them in assessing Gulley's comparator evidence.  As explained below, MPD's disciplinary policy calls for discipline that is "prompt, consistent, fair, and equitable," and "progressive."  MPD General Order 120.21, Section II, ECF No. 23-3.  So Gulley's prior record of discipline must be considered alongside his comparators'.

aspects of his employment situation were nearly identical to those of the proffered employees." *Burton v. Dist. of Columbia*, 153 F. Supp. 3d 13, 69 (D.D.C. 2015) (cleaned up). Little wonder, given that Gulley's comparators had almost no disciplinary records at all.

Nor has Gulley presented evidence that the District deviated from its own established procedures. *See Wheeler*, 812 F.3d at 1115. Gulley's only support for this claim is the argument that a shop steward made on his behalf during an IAD investigation into Gulley's misconduct. *See* Pl.'s Opp'n at 17. But the record tells a different story. MPD investigated Gulley for more than a dozen discrete offenses throughout his tenure as a police officer. It thoroughly documented its investigations, and Gulley has not pointed to a single impropriety other than the "vague conclusions" of a shop steward advocating on Gulley's behalf. Def.'s Reply at 12 (citing *Figueroa v. Pompeo*, 923 F.3d 1078, 1092 (D.C. Cir. 2019)). That is far too little to raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

## 2.

Finally, Gulley has not shown that the District retaliated against him for any alleged protected activity. To make out a prima facie claim of retaliation, Gulley must show that he (1) "engaged in protected activity," (2) "was subjected to an adverse employment action," and (3) "there was a causal link between the protected activity and the adverse action." *Hamilton v.*

*Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012). "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . . This requires proof that unlawful retaliation would not have occurred in the absence of the alleged wrongful actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Gulley claims that he engaged in protected activity when he filed various reports with MPD, the EEOC, and this Court. Specifically:

- In December 2014 when he filed a claim of sex discrimination with MPD. Pl.'s Opp'n at 18.

- In March 2017 and April 2018 when he filed his EEOC Charges of Discrimination. *Id*.

- In July 2018 when he filed a race and sex discrimination complaint with MPD. *Id.*

- And in November 2018 and August 2019 when he filed his Complaint and Amended Complaint here. *Id*.

He argues that his suspension for 32 days in May 2019, his indefinite suspension without pay in June 2019, and his termination in October 2019 were all adverse actions. *Id*. at 18–19. And he claims that he has shown a causal link because the District "had knowledge of" his protected activity and "the adverse personnel action took place shortly after that activity." *Id*. at 19 (quoting *Berghauer v. Mabus*, 934 F. Supp. 2d 55, 83 (D.D.C. 2013)).

Even assuming Gulley can meet the first two prongs of the retaliation test, he fails to show a causal link between them. *See Hamilton*, 666 F.3d at 1357. Consider *Taylor v. Solis*, in which the D.C. Circuit rejected a retaliation argument based on proximity when two and one-half months had elapsed between the employee's activity and the adverse action. 571 F.3d 1313, 1322 (D.C. Cir. 2009). The Circuit cited with approval several cases that held similar intervals

too great to establish causation.  *See, e.g.*, *id*. (citing *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007) ("positive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine")); *id*. (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("stating, 'to establish a prima facie case . . . the temporal proximity must be "very close,"' and citing with approval case holding three month interval is, as a matter of law, not close enough")).

The only interval less than three months here is between Gulley's Amended Complaint in August 2019 and his termination in October.  But as the District persuasively argues, Gulley's Amended Complaint was not a meaningful change from his Complaint the previous November. Def.'s Reply at 13–14.  To be sure, Gulley added new allegations in his Amended Complaint. *Compare* Compl. *with* Am. Compl.  But as the Court noted at the time, Gulley added no new counts and the additional allegations were factually related to the original Complaint.  Minute Order (August 14, 2019).  The meaningful moment was Gulley's filing of this lawsuit in November 2018, not his Amended Complaint last August.

More, Gulley has shown nothing beyond "mere proximity."  *See Woodruff*, 482 F.3d at 530.  The Court has already addressed the District's stated reasons for terminating Gulley, as evidenced by MPD's many investigations into Gulley's many on- and off-duty transgressions. So even if the interval were only two months, that proximity would not be enough to "defeat the presumption that the proffered explanations are genuine."  *Id*.  Gulley has simply presented no factual support for his retaliation claim.  The District is entitled to summary judgment on this claim, too.

**IV.**

For all these reasons, the District of Columbia's Motion for Summary Judgment will be granted.  A separate order will issue.


Dated: July 15, 2020                                    _____
                                                        TREVOR N. McFADDEN, U.S.D.J.